## No. 10,920.

## THE STATE EX REL. CITY OF NEW ORLEANS vs. NEW ORLEANS & CARROLLTON RAILROAD COMPANY.

In proceedings, under Act 133 of 1888, to enforce the performance of a contract therein named, the contract must be so fixed in terms, and the liability of the defendant so certain, and the duty to be performed so particularized, that the duty imposed upon the defendant by the court in decreeing the execution of the contract can be readily ascertained, and as readily executed.

An ordinance of the city of New Orleans, enacted before the passage of Act 133 of 1888, and which becomes a part of a contract between said city and a railroad corporation, requiring notice to be given to said corporation of certain repairs to be done on the streets, must be complied with before the city can invoke the remedy by *mandamus* as provided in said Act 133 of 1888.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

---

*E. A. O'Sullivan,* City Attorney, and *Horace L. Dufour,* Assistant City Attorney, for the Relator and Appellant.

---

*John M. Bonner* for Defendant and Appellee:

1. Act 133 of 1888 is in derogation of common rights, and should be strictly construed. It should be applied to no case not embraced in the very wording of the statute. 42 An. 138.

2. Where the contract points out the method in which the company shall be put in default, that method is alone to be used, and so essential a stipulation of the contract can not be dispensed with.

3. Act 133 contemplates that the specific acts required to be done should be minutely particularized, as a condition precedent to the use of the harsh writ of *distringas.* "A prayer for a *mandamus* that merely seeks to accomplish a general result, and does not specify the particular acts to be done, is too vague. 30 An. 237; High on Ex. Rem., 2 Ed. 561.

State ex rel. City vs. Railroad Co.

4. A contract imposing the burden on a street railroad company of keeping the streets in order through which its tracks pass only requires such material to be used in making repairs as the roadways were composed of when the contract was made.

5. When the evidence discloses that the city of New Orleans has failed to do her duty in keeping the longitudinal ditches necessary to the drainage of the streets open, and where it is proved that the defendant has, in good faith, endeavored to comply with its contract, the obligations of which have been largely added to by the arbitrary and malicious acts of the Commissioner of Public Works, a resort to the summary proceedings of the Act 133 should be discountenanced.

6. Where a statute creates a liability, and names a remedy for the violation thereof, that remedy is alone to be used. 20 Wal 526, 527; 120 U. S. 783.
So when a liability is created by contract, and a specific remedy is stipulated to be used to enforce said liability, that remedy forms a substantive part of the contract, and can not be changed by the Legislature without impairing the obligation of the contract.

---

The opinion of the court was delivered by

MCENERY, J.    The city seeks by *mandamus*, under Act No. 133 of 1888, to compel the defendant company to perform certain duties growing out of its contract with the city of New Orleans.

The petition refers to the several stipulations in the contract, which, it is alleged, have been violated, and the prayer is "that the defendant be ordered to proceed at once to do the work, and furnish the materials set forth in the said specifications made part hereof and annexed hereto as Exhibit B, and complete said work as soon as possible, or show cause to the contrary."

The specifications annexed to and made part of the petition are as follows:

"1. Jackson street, from St. Charles to Water street, from curb to curb, including all crossings, bridges, culverts and intersections, is not now, and has not been kept in good order and condition at all times.

"The earthen roadway is not properly attended to by filling and grading, but is full of ruts and irregularities.    At many points it is difficult and dangerous to cross the track from side to side of the street.

"This road should be repaired by cleaning out the holes, and filling and grading with river sand, or other equally good material, to the levels given by the city engineer, with such guard planks on both sides of the rail as will allow the tracks to be crossed at any point.

" 2. The tracks of this railroad, on Jackson street, have not a flat four-inch wide rail, but a T rail. This T rail should be removed, and the track relaid on four stringers and cross-ties to a grade given by the city engineer, with guard planks on either side.

" 3. Jackson street, between the rails and tracks, from St. Charles avenue to Water street, has not been paved with an improved pavement agreed upon by the property holders and the City Council. In the removal of this pavement Belgian blocks should be selected, as neither wood, cobble, gravel nor asphalt is an 'improved' or suitable pavement for this location.

" 4. The street or roadway bordering the lake side of the neutral ground on St. Charles avenue, from Louisiana avenue to Madison street in Carrollton, from curb to curb, also including all crossings, bridges, culverts and intersections, is not now and has not been kept in good order and condition at all times.

" The roadway throughout the entire length requires crowning up with new lake shells, and also the opening of the side drains.

" It is now badly shaped, and full of irregularities and holes.

" The gutters on either side of the road should be opened so as to establish drainage for the road, the neutral ground and the properties on the swamp side, throughout each block to the gutters of the cross streets, on grades and with dimensions to be given by the city engineer.

" 5. Many of the crossings, bridges, culverts and intersections are out of repair, as well as too steep, uneven and rough, both below and above Louisiana avenue.

" It is impossible permanently to enumerate these, as the work from time to time received temporary repairs. Their general condition is bad and is condemned as not being a fair compliance with the contract of the road.

" These repairs should be made by replacing all work out of grade, and all decayed material, so as to give a smooth, soft and convenient passage for both foot and street traffic.

" 6. The neutral ground is uncared for and in bad order, being in many places rough and overgrown with weeds."

The defendant filed an exception to the suit, the first ground of which was incorporated in the answer. The other grounds are as follows:

" 1. Defendant excepted to that portion of the petition that asks for the laying of a guard plank, and the changing of the T rail into a flat four-inch rail on Jackson street, on the ground that the writ of *mandamus* would not issue to enforce the repairing or construction or reconstruction of a railroad track, and does not lie to compel the changing of the form of rails that have been in use on that street for more than twenty-five years.

" 2. The defendant has not been put in default under and in pursuance to its contract, which provides that ' it shall be the duty of the Administrator of Improvements and City Surveyor, to notify, in writing, the company of any violation of these specifications, and giving a reasonable time to rectify any such violation', etc., and no such demand has been served on the company.

" 3. That the Act No. 133 of legislative acts of 1888, under which this proceeding was taken, requires and contemplates that a specific detail of the exact work to be done, its exact nature and location, with lines and levels and everything needful and necessary for the intelligent performance of the work, should be embodied in and should accompany the application for a writ of *mandamus*, and that these essential requirements are not contained in the petition."

The exceptions were overruled and the defendant company answered, reserving its exceptions, averring in substance that it was not required by its contract with the city to change the T rail on Jackson street with a four-inch rail until said track had been paved with improved pavement to be agreed upon by the city and the property holders residing on said street, and for the same reason it was not required to pave between its tracks on said street; that its contract does not require a guard plank on either side of the track; that a portion of said street is a dirt street and has always been a dirt street, and that the defendant is not required to use any other material than dirt for its repairs; that it is not compelled under its contract to keep the neutral ground on St. Charles avenue in repairs. Nor does its obligation extend to opening side drains, and the gutters on either side of the roadway on the lake side of St. Charles avenue; that those duties are imposed upon the city of New Orleans.

Finally the defendant avers that it has used due diligence in complying with its contract, and has endeavored to keep the streets in order and in good condition.

There was judgment for the defendant denying the *mandamus*, and the plaintiff, city, appealed.

The contract between the city and the defendant company contains the following stipulation, which was a part of the ordinance under which the contract was sold, and forms a part of said contract.

"It shall be the duty of the Administrator of Improvements and City Surveyor to notify in writing the company of any violation of these specifications, giving them a reasonable time to rectify any such violation; if upon the expiration of said mentioned time the company has neglected or refused to comply, the City Council shall have the said violation rectified.

"The cost for so doing shall be recoverable before any court of competent jurisdiction."

In a case similar to this in the issues involved, the State ex rel. City of New Orleans, 37 An. 589, it was held that the writ of *mandamus* does not lie to compel corporations to perform obligations arising simply from contract. This was the law until the enactment of Act 133 of 1888.

This act simply gives the remedy by *mandamus* to enforce certain obligations on the part of corporations therein named in favor of certain parties mentioned in the act.

But it will not be seriously contended that this act arbitrarily shuts out all defences to the contracts named in the act. Nor does it in any way change or modify the law governing proceedings by *mandamus*. It provides for summary trial, and a speedy enforcement of the judgment rendered. In other respects the rights of the litigants and the law regulating them are left undisturbed. The act provides for a decree of specific performance of the contract, and the law on this subject must govern in the proceedings instituted under the act.

We had occasion to say in City of New Orleans vs. New Orleans & North Eastern Railroad Company, in reviewing the provisions of said act, that the decree ordering the execution of the contract "can not be demanded as a matter of right. It rests largely upon judicial discretion, not arbitrarily exercised, but according to the soundest principles of equity and justice. Not only the question of the ability of the plaintiff to seek adequate compensation in damages, but the ability of the court to grant the relief must necessarily enter into the discretion which the court is bound to exercise in considering the remedy invoked. The contract must be fixed and the

liability of the defendant so certain that the duty imposed upon him by the court in ordering the execution of the contract can be readily ascertained, and as readily enforced." 44 An. 67.

The application for the *mandamus* and the specifications annexed do not show either that element of certainty in the contract or specify with sufficient particularity the duty to be performed. The specifications may be characterized in the summary with which they conclude:

" It is impossible to permanently enumerate these, as the work from time to time received temporary repairs. Their (streets) general condition is bad, and is condemned as not being a fair compliance with the contract of the road."

As stated by us in State ex rel. Railroad Company, 37 An. 594, "it is plain that the enforcement of such a mandate would practically throw upon the court the administration of the streets of the city, and its time would be consumed by constant rules for contempt, involving questions as to whether this hole should be filled up or that quagmire be made firm, and how these things should be done, and the like."

But, conceding that the defendant company has failed to perform its duties under the contract, and the specifications are such that a decree of specific performance could be rendered thereon, it is evident that the plaintiff must comply with the statutory regulations of the City Council as a condition precedent before it can avail itself of the proceedings authorized by Act No. 133 of 1888. The Ordinance No. 7812, administration series, which forms a part of the contract sought to be enforced by *mandamus*, provides that the Administrator of Improvements and City Surveyor shall notify in writing the company of any violation of its contract, giving it reasonable time to rectify the same, and if upon the expiration of said time the company fails to perform its duties, the city shall have the work done, the cost of which may be recovered before any court of competent jurisdiction.

This notice had not been given to the company before the institution of this suit. It was a condition precedent, stipulated by the parties the failure to perform which must necessarily result in a denial of the relief prayed for by plaintiff.

Judgment affirmed.