# Baltimore & Ohio Southwestern Railroad Company v. W. H. McDonald.

1. GARNISHMENT—*what effects can be reached by.* The action of garnishment is a statutory remedy and no effects in the hands of a garnishee can be reached thereby unless the statute so provides.

2. JUDGMENT IN GARNISHMENT—*when, does not protect garnishee.* Where a judgment has been rendered against a garnishee in an attachment suit, in which the principal defendant did not appear and was not served, such judgment will not protect a payment made thereunder as against the claims of such principal defendant, where it appears that such garnishee neither protected the rights of such principal defendant by properly defending such action nor notified him of the pendency thereof.

3. FOREIGN JUDGMENT—*what essential in order that full faith and credit may be given to.* In order that full faith and credit may be given to a judgment of a sister state, as provided by the constitution of the United States, the laws of such state must be shown in order that it may appear what effect is given such judgment in the state of its rendition.

4. JUDICIAL NOTICE—*what not taken of.* Judicial notice is not taken of the statutory laws of a sister state.

5. COMITY—*when doctrine of, applies to defeat a fraud.* The law of comity forbids the use of the courts of one state to perpetrate a fraud upon a citizen of another state.

6. EXEMPTION OF WAGES—*fundamental rule in garnishment cases where, is involved.* Where the creditor, debtor and garnishee at the time of the creation of both debts are all residents and doing business in the same state, the exemption of wages is such an incident and condition of the debt from the employer that it will follow the debt, if the debt follows the person of the garnishee into another state, and attach itself to every process of collection in any state, unless jurisdiction is obtained over the person of the principal debtor.

7. GARNISHEE—*duty and'liability of, under act of May 11, 1901.* This act makes it the duty of the employer upon the delivery to him of the affidavit provided thereby, to pay at once to the employee all exempt wages then due, notwithstanding a writ of garnishment may have been served upon him; as a result, therefore, where the employee makes and delivers such affidavit, the whole burden of claiming and establishing the exemption of the employee is cast upon the employer.

8. GARNISHEE—*when judgment against, does not protect from claims of debtor.* Where a railroad company is served as garnishee in an attachment suit brought in another state against an employee who is not served and who does not appear, and where before judgment is rendered against such garnishee, such employee delivers to it an affida-

vit in conformity with the provisions of the act of May 11, 1901, and where such company does not, pursuant to such affidavit, pay to such employee the exempt wages due him and does not properly set up and prove such act and all the other necessary facts in the state where said suit is pending, it cannot successfully plead a judgment in such suit as a bar to a subsequent action by the employee brought to recover such exempt wages.

Action of assumpsit.  Appeal from the Circuit Court of Clay County; the Hon. TRUMAN E. AMES, Judge, presiding.  Heard in this court at the August term, 1903.  Affirmed.  Opinion filed March 10, 1904.

A. M. ROSE and KRAMER, KRAMER & SHAEFFER, for appellant; EDWARD BARTON, of counsel.

J. W. THOMASON, for appellee.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was a suit commenced before a justice of the peace of Clay County, by appellee, a wage earner, against appellant, his employer, to recover $38 wages.

Our statute now provides:  "The wages for services of a wage earner who is the head of a family and residing with the same to the amount of fifteen dollars per week shall be exempt from garnishment.  All above fifteen dollars per week shall be liable to garnishment.  Every employer shall pay to such wage earner such exempt wages earned by him, when due, upon such wage earner making and delivering to his employer, his affidavit that he is the head of a family and residing with the same, notwithstanding the service of any writ of garnishment upon such employer, and the surplus only above such exempt wages shall be held by such employer to abide the event of the garnishment suit."  Act of May 11, 1901.  See Hurd's Revised Statutes, 1901, sec. 14, chap. 62.

Appellee was a citizen of Illinois and had resided in this state all his life; was a wage earner, the head of a family, residing with the same.  He worked for appellant at Flora, Illinois, during February, 1902, nineteen days at $2.00 per day.  On the 27th day of February, 1902, he made and duly delivered to appellant his affidavit and demand as fol-

lows: "To the Baltimore and Ohio Southwestern Railroad Company: State of Illinois, County of Clay. I, W. H. McDonald, being duly sworn, upon oath depose and say, that I have been an employee of the Baltimore and Ohio Southwestern Railroad Company from February 1, 1902, to February 21, 1902, inclusive, having worked in that time nineteen days, at $2 per day, in their yards at Flora, Illinois, and that there is now due me $38, which wages do not exceed the rate of $15 per week, which amount the law exempts from garnishment, that is to say, that my wages amount to $14 per week. And affiant further says that he is a wage earner, residing in the State of Illinois, and that he is the head of a family and residing with the same." With this affidavit was a notice to the effect that appellee would bring suit, if not paid by 10 o'clock A. M., February 28, 1902. Appellant did not pay, and appellee, in pursuance of his notice, commenced his suit before a justice of the peace, where, on March 22, 1902, a judgment was rendered against appellant for $38 and costs. From this judgment an appeal was prosecuted in the Circuit Court.

When the case came on for trial in the Circuit Court, jury was waived, and the case submitted to the court by agreement. Appellee established by proper evidence all the facts above stated, and rested his case. Appellant set up as a defense the record of a garnishment proceeding, before a justice of the peace, in the State of Kentucky. That record discloses that one C. O. Stafford of Clay County, Illinois, had assigned to Charles Wolf, of Jefferson County, Kentucky, an open account against appellee for a "balance" of $46.58; that on the 25th day of February, 1902, Wolf commenced an attachment suit against appellee before a justice of the peace in said Jefferson County, and summoned appellant as garnishee. The case was continued to May 12, for "constructive process" as to appellee. At some time not disclosed by the record, but during the progress of the proceedings and prior to May 12, appellant filed an answer setting up that it was a foreign corporation doing business in the State of Kentucky as a common carrier;

that the cause of action arose in the State of Illinois; that appellee here, the defendant in that proceeding, resided at Flora, Illinois, and was a citizen of that state; that it owed him $38 and no more for wages earned by him in the State of Illinois; that by the terms of his employment his wages were payable in Illinois; that by the laws of that state all his wages were exempt; that he had never been served with process and had not appeared and was not before the court; denied all liability as garnishee, challenging the jurisdiction of the court, and prayed to be dismissed hence with its costs. On May 12, the justice entered an order, finding that appellee was before the court on " constructive process," and had made default; that appellant had answered that it was indebted to appellee in the sum of $38; that the attachment was sustained; and, granting judgment against appellant, in favor of the attachment claimant, for the payment of the $38 to be applied on his claim. On May 24, appellant was ruled to pay the amount of the judgment into the justice's court, and on July 31 paid the same, in response to this rule.

During all the time this garnishee proceeding was pending, appellee resided in Flora, Illinois, and appellant knew that fact, and also knew all the facts pertaining to his right to the exemption. It did not notify him of the pendency of the proceeding, though it had all opportunity, and without any inconvenience to. itself, to do so. The only step taken by appellant towards protecting itself, or towards protecting the rights of appellee, was the delivering of the above mentioned answer to the justice. This answer was not sworn to by any one nor in any manner verified, nor was any evidence or proof of any kind at any stage of the proceeding produced or tendered in support of it. Appellee was not personally served with process in the garnishment proceedings, and could not have been for he " was never in the State " of Kentucky. He in no manner entered his appearance, and the evidence fully warrants the conclusion that he had no knowledge or information of the institution or existence of such proceeding at any time during its pendency.

The Circuit Court rendered judgment in favor of appellee for $38 and costs.   From this judgment appellant has appealed to this court.

Waiving some technical objections to the transcript of the garnishee proceedings and to the various certificates attesting it, and assuming it to be a duly authenticated record of the action had in the justice court of Kentucky, then the question is, does the judgment rendered in that case when considered in connection with all the facts disclosed by the record in the case now at bar, constitute a valid defense to appellee's suit here ?   The process of garnishment is a purely statutory proceeding and as it now exists in this state is unknown to the common law.   Am. & Eng. Enc. of Law, 2nd ed., vol. 14, page 739.   " * Garnishment is a purely statutory proceeding, and cannot be pushed in its operation beyond the statutory authority." Drake on Attachment, 5th ed., sec. 451a.   Unless the statute expressly so provides, no effects of the defendant coming into the garnishee's hands, or indebtedness due from the garnishee to the defendant, can be reached by garnishment, and when the statute provides garnishment process, then only such effects or indebtedness can be reached thereby as the statute expressly authorizes.

Garnishment proceedings against an employer for wages due from him to his employee, in this state stand in a class alone, clearly differentiated from all other garnishment proceedings.   Therefore, whatever may be stated in this opinion in the further discussion of the subject must be understood as applying not to the subject in general but to the particular class of garnishment proceedings within which this case falls.

Prior to the act of May 11, 1901, quoted in the beginning of this opinion, our Supreme Court had held in Bliss v. Smith, 78 Ill. 359, that an employer had a clear right, notwithstanding he had been served with garnishment process, to pay his employee his wages, so long as the amount did not exceed at any one time, the amount exempt. And in C. & A. R. R. Co. v. Ragland, 84 Ill. 375, the court

had held that when an employer is garnisheed as debtor of his employee for wages, such employer is bound to disclose the facts as to his employee's right to exemption, "and claim for him the benefit of the exemption allowed by law," and upon failure to do so the employer is liable to the employee for the amount exempt, notwithstanding he may have paid it once in satisfaction of the garnishor's judgment. These decisions were accepted as the law applicable to such cases and were followed by all the courts of the state, but there was some uncertainty as to the full meaning of the language "claim for him the benefit of the exemption allowed by law," as used by the court, and as to whether the employer might be compelled to make payment to his employee of the amount exempt, after being garnisheed, and pending litigation in such proceeding. It was an open question as to the right of the employer to withhold such payment, and also as to whether he had performed his whole duty when he had set up in his answer the facts and made the claim, or whether it was not his duty in case his answer was traversed to support it by evidence, or at least to notify the employee, when such employee was not before the court, that he might have an opportunity to make the necessary proofs. While the law was in this state of uncertainty the act of May 11, 1901, was passed. This act makes it the duty of the employer upon delivery to him of the requisite affidavit, to pay at once to the employee all exempt wages then due, "notwithstanding the service of any writ of garnishment upon such employer." When such affidavit is delivered to the employer he cannot withhold, pending garnishment litigation, such portion of the wages then due as are exempt. He must pay at once, and if he would protect himself, must not only set up in his answer the facts and make the claim, but he must, when necessary, produce the requisite evidence in support of his answer to make the claim good, at his own peril. If this statute is to serve its plain purpose and have any practical effect, this must be so. Where the employee makes and delivers the requisite affidavit, the whole

burden of claiming and establishing the exemption is cast upon the employer.

If the judgment relied upon as a defense in this case had been rendered by any court of this state, we think it would not be contended that such judgment would bar appellee's right to recover.    At this point appellant's counsel suggest that they have established a judgment of a court of a sister state and that under the Federal Constitution, " full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state." And they insist that " when a judgment has been rendered against a garnishee in one state, upon proceedings had in a court invested with jurisdiction of the cause and parties and without collusion, such judgment is conclusive in every other state, and is a complete defense to the garnishee when sued for the same debt by his original creditor." They cite in support of this proposition the following texts and cases :   Black on Judgments, chap. 22, sec. 293; Freeman on Judgments, sec. 167; Moore's Civil Treatise, 4th ed., sec. 1580;  Dwight-Eaton Co. v. Kelly, 45 Ill. App. 533; B. & O. S. W. R. R. Co. v. Adams, 66 N. E. Rep. 43; C., R. I. & P. Ry. Co. v. Sturm, 174 U. S. 710; Allen v. Watt, 79 Ill. 284.   This they contend demands a reversal of appellee's judgment, without reference to what his rights under the laws of this state might otherwise be.

In this connection there is another feature of the case not wholly unimportant and that is, that the alleged debt upon which the attachment proceeding relied on by appellant is based, was a claim for balance on account, in favor of one C. O. Stafford, a resident of Flora, Illinois, against appellee, which Stafford had assigned to Charles Wolf .of Jefferson County, Kentucky.   This Charles Wolf instituted and prosecuted the proceedings relied on by appellant.   He prosecuted in his own name, it is true, but he filed with his affidavit a copy of the assigned account, disclosing the facts.

The act of June 17, 1891, provides that, " Whoever, either directly or indirectly, assigns or transfers any claim for debt against a citizen of Illinois, for the purpose of having

the same collected by proceedings in attachment, garnishment, or other process, out of the wages or personal earnings of the debtor, in courts outside of the State of Illinois, when the creditor (and) debtor (or) person or corporation owing the money intended to be reached by proceedings in attachment are each or all within the jurisdiction of the courts of the State of Illinois, shall, upon conviction thereof be fined in any sum not less than ten dollars nor more than fifty dollars for each offense." Hurd's 1901, sec. 33, chap. 63.

There is quite enough disclosed in the record to warrant the inference that Stafford assigned to Wolf the account against appellee in violation of the statute, that Wolf was Stafford's confederate, and that appellant with full knowledge of these and all other material facts, failed to either give notice to appellee or to properly defend the case in his interest. Under such state of facts the courts of this state ought not to lend their aid to deprive a citizen of this state of the legal rights provided for him in the constitution and guaranteed to him by the statutes of this state, unless the law makes it imperative upon them to do so.

It must be borne in mind that the question here is not, shall full faith and credit be given to the judgment relied upon by appellant, but when due faith and credit have been given to it, what is its effect upon the controlling issues involved in this case?

With the exception of some instances involving local public policy falling within the purely police powers of the respective states, the full faith and credit clause of the Federal Constitution requires that a judgment rendered in a civil cause in one state shall be given the same force and effect, when sought to be availed of in another state, as such judgment would have under the same or similar circumstances in the state where it was rendered, and no greater. The law of the state where the judgment was rendered, controls. It follows then, that in order to give the judgment its proper effect in the state where it is sought to be availed of, the court must be cognizant of

the laws of the state where it is rendered.   There is no proof in this record as to the laws of the State of Kentucky upon the controlling questions involved in this case.   In fact, no proof at all upon these subjects, except that pertaining to the jurisdiction of the court and constructive service upon a defendant.   The courts of one state cannot take judicial knowledge of the statutory laws of another state.   Such laws must be proved as facts.   C. & A. R. R. Co. v. Wiggins Ferry Co., 119 U. S. 615;   People ex rel. v. Dewey, 50 N. Y. Supplement, 1013;   Bank v. Mayer, 44 La. Ann. 1031;   Monroe v. Douglas, 5 N. Y. 447;   Rape v. Heaton, 19 Wis. 328;   Pelton v. Pelton, 13 Ohio, 209;   Missouri Pac. R. R. Co. v. Sharritt, 43 Kan. 375;   Davis v. Headly, 22 N. J. Eq. 115;   Taylor v. Runnyman, 36 Clark 474;   McFarland v. White, 13 La. Ann. 394;   James v. James, 81 Tex. 373;   Price v. The Chicago & N. W. Ry. Co., 36 Wis. 283.   In the case last cited the court held, that under the laws of Wisconsin, "the earnings of all married persons, or persons who have to provide for the entire support of a family" in that state for the sixty days next preceding the issue of any process against them are exempt from levy, seizure or sale upon such process, and cannot be garnisheed on attachment, and that where that question arises in any case, it must be presumed, in the absence of proof, that the laws of a sister state are the same in that respect as the laws of Wisconsin. That is a case in many respects identical with the one at bar.   There a wage earner, a resident of Wisconsin, had sued a railroad company in the courts of his own state for exempt wages.   The railroad company set up as a defense, a garnishee judgment rendered against it in the courts of Illinois, as appellant has set up the Kentucky judgment here.   There as here, there was no appearance by the wage-earner in the garnishee proceedings, nor personal service upon him, and he had no actual notice, and there was no proof as to the state of the garnishment or exemption laws of Illinois.   The court held that the judgment of the Illinois court was not a bar, and allowed the wage earner to recover.   The courts of some states, among them our

own, have held that the court where the judgment is sought to be availed of will take judicial notice of the existence and scope of jurisdiction of the various courts of the state wherein the judgment in question was rendered, but we think the rule is now well settled that courts of one state cannot take judicial notice of all the statutory laws of a sister state necessary to be known to enable the court to determine the full effect in such a state, of a particular judicial proceeding of one of its courts.  It is true that the texts cited by appellant's counsel, lay it down as a general rule that when a judgment has been rendered against a garnishee, in one state, such judgment constitutes a complete defense to the garnishee when sued for the same debt by his original creditor in another state.  These texts must be read in the light of the rule, that a judgment can have no greater effect anywhere than it might lawfully have in the state where it was rendered.  Therefore, to these texts must be added, "provided it is made to appear that such judgment would in such case, constitute such defense in the state where it was rendered."

One more fact with reference to the authorities cited and relied on by appellant's counsel must not be overlooked, and that is, that none of them deal with a mandatory statutory requirement, such as that imposed by the act of May 11, 1901.

There is a principle of law applicable to the facts of this case under which appellant might have availed in the Kentucky court, of the benefit of the exemption laws of the State of Illinois, and that is that the law of comity forbids the use of the courts of one state to perpetrate a fraud upon the citizen of another state.  This principle is ably discussed, and applied to a state of facts almost identical with the facts of the case at bar, in Drake v. L. S. & M. Ry. Co., 69 Mich. 168.  The "Lake Shore" railroad runs through both Indiana and Michigan.  One J. S. Corder was a citizen and resident of Indiana, a wage earner in the service of the "Lake Shore" road, in Indiana, the contract for his service made and the services performed

in Indiana, and the amount due him was exempt under the laws of Indiana. The claim upon which the garnishee proceedings in Michigan was based, was an open account signed by a citizen of Indiana to Drake, who was a citizen of Michigan. Drake commenced attachment proceedings in one of the courts of Michigan and garnisheed the railroad company. The railroad company pleaded both the facts and the exemption laws of Indiana, and proved them. The court says: "The record discloses a plain attempt to use the courts of this state (Michigan) to evade the exemption laws of a sister state, and to deprive the laborer in such state of the benefit of the laws to protect his wages from seizure, while he yet remains a citizen of Indiana, and has not been personally in Michigan, or removed his property into this state, or acquired any property within our jurisdiction. * * * There is certainly no good reason why * * * the courts of this state (should be used) to collect a debt against a citizen of Indiana whose person or property is not within our jurisdiction, and whose wages, thus sought to be reached and confiscated, are exempt, under the laws of Indiana, from seizure. * * * Nor can there be found any authority to support it. On the contrary, all the authorities agree that the courts of one state cannot be used to perpetrate a fraud upon a citizen of another state, to evade or violate the laws which protect him within his own domicile."

If appellant had done in the Kentucky court all that the railroad company did in the Michigan court in the case last above quoted from, the Kentucky court would doubtless have held as the Michigan court did, and would have given effect to the Illinois exemption law, without reference to what its own exemption law might, in fact, have been.

In addition to all that has been said above, there is a broader and more comprehensive principle applicable to garnishment cases where exemption of wages to a wage earner is involved, which warrants the courts of this state in giving full effect in all cases to the mandatory provisions of the act of May 11, 1901, without danger of doing great in-

justice to any one. That principle is well expressed in Drake v. L. S. & M. Ry. Co., 69 Mich. 168 (179). The court says : " It must be held, not only as a matter of simple justice, but as sound law, which means justice, that where the creditor, debtor, and garnishee, at the time of the creation of both debts are all residents and doing business in the same state, and both debts are created, and intended to be payable in that state, the exemption of wages is such an incident and condition of the debt from the employer that it will follow the debt, if the debt follows the person of the garnishee into another state, and attach itself to every process of collection in any state, unless jurisdiction is obtained over the person of the principal debtor; that it becomes a vested right *in rem,* which follows the debt into any jurisdiction, where the debt may be considered as going." This is the conclusion reached by one of the ablest Supreme Courts of any state, in a case that bears evidence of having undergone the most thorough investigation and of having received the most thorough consideration. The court cites in support of its holding, the following cases : " Wright v. Railroad Co., 19 Neb. 175; Turner v. Railroad Co., 19 Neb. 241; De Witt v. Machine Co., 17 Neb. 533; Railroad Co. v. Dooling, 78 Ala. 524; Price v. Railway Co., 36 Wis. 283; Bayliss v. Houghton, 15 Vt. 626; Tingley v. Bateman, 10 Mass. 343; Sawyer v. Thompson, 4 Fost. (N. H.) 510; Railway Co. v. Maltby, 34 Kan. 125; Lovejoy v. Albee, 33 Me. 414; Hamilton v. Rogers, 67 Mich. 135." To these we add : Railroad Co. v. Smith, 70 Miss. 344; Mason v. Beebee, et al., 44 Fed. 556; Wells v. E. T. V. & G. R. R. Co., 74 Ga. 548; Singer Mfg. Co. v. Fleming, 39 Neb. 697; Martin v. Central Vermont R. R. Co., 50 Hun, 347 (N. Y.); Mo. Pac. Ry. Co. v. Sharritt, 43 Kan. 375; Railroad Co. v. Maggard, 6 Colo. 85; Reno on Non-Residents, sec. 138 (1892); Kester v. Kern, 2 Ind. App. 488; Rood on Garnishment, sec. 101 (1896).

It is true that there is some conflict of authority upon this question, and that a few cases, especially among the earlier ones, appear to hold directly to the contrary, and

others reach the same end or substantially the same effect, by quite different lines of reasoning. In fact, our own court in cases of this class arising prior to 1888, the date of the Michigan decision, held, in form, to the general proposition that one state cannot recognize the exemption laws of another state, but protected the non-resident wage earner by allowing to him the full benefit of our own exemption laws, which was only another way of accomplishing substantially the same end. In 1891, our legislature passed the act quoted above in this opinion, which has now been in force more than twelve years, making it mandatory upon our courts to allow to a non-resident wage earner the full benefit of the exemption laws of his own state, when such laws are properly pleaded and proved, and the exemption thereunder properly claimed and the requisite facts established. The great weight of authority at this time, is in favor of the proposition that the courts of one state will not deprive a non-resident wage earner of another state, of the benefit of his exemptions. The cases cited in support of the opposing view, will be found on critical examination, to be in the main, not wholly in point, and very few of them will stand in direct conflict with our view of the case.

Much stress is laid by appellant's counsel upon the case of C., R. I. & P. Ry. Co. v. Strum, 174 U. S. 710. That was an appeal from the Kansas Supreme Court, in a case where the Kansas court had refused to give effect to a judicial proceeding in the courts of Iowa. The United States Court had no power in that case to determine and could not determine, whether the Iowa courts had decided according to the weight of authority or not. What it did determine and all it could determine, was, " that the Iowa courts had jurisdiction and that the Kansas courts did not give to the proceedings in the Iowa courts, the faith and credit they had in Iowa." And it is not amiss here to remark, that the Iowa courts stand at the present time almost alone in their position upon the questions involved in this case.

We are warranted in assuming that if appellant, when served with appellee's affidavit and demand, had obeyed the

mandatory statute of 1901, and paid appellee the exempt wages then due him, and had properly set up and proved the Illinois statute and all the other necessary facts, in the Kentucky court, that court would not have rendered judgment against it.

The judgment of the Circuit Court is affirmed.

*Affirmed.*