## Illinois Central Railroad Company v. Otis Cowles, for use of A. Friedman.

### Gen. No. 12,534.

1. GARNISHMENT—*act of 1901 construed.* This act is mandatory upon
the employer and compels him to pay exempt wages when due upon
receiving the affidavit of the employee that he is the head of a family
and residing with the same, notwithstanding such affidavit may subse-
quently appear to have been false.

Garnishment proceeding. Appeal from the Circuit Court of Cook
County; the Hon. JULIAN W. MACK, Judge, presiding. Heard in the
Branch Appellate Court at the October term, 1905. Reversed without
remanding. Opinion filed June 12, 1906.

Statement by the Court. This is an appeal from the judgment of the Circuit Court for $22.50 in favor of appellee and against appellant as garnishee. The case was before that court on appeal from a justice of the peace. The facts were agreed upon and are set forth in a stipulation substantially as follows: February 27, 1904, a suit in attachment was begun before a justice of the peace, by A. Friedman v. Otis Cowles, and the Illinois Central Railroad Company was on the 29th of said month of February served as garnishee. At that time said Otis Cowles was an employee of and working for said Illinois Central Railroad Company, and there was due him from said company wages exceeding the amount of fifteen dollars. Upon the 3rd day of March following the said Cowles filed with his said employer, the railroad company, an affidavit duly sworn to by him before a notary public, in which on oath he says that he is the defendant in the said cause of Friedman v. Cowles pending before the justice, and that he "is informed and believes the fact to be that his employer, the Illinois Central Railroad Company, has been served as garnishee in the above entitled cause; that this affiant is the head of a family and resides with the same; that he makes this affidavit in accordance with paragraph 14 of the Garnishment Act of the the State of Illinois, entitled 'An Act in regard to Garnishment', in force July 1, 1901; and this affiant further says that his salary or wages from the Illinois Central Railroad Company, his employer, are at this time a sum not exceeding fifteen (15) dollars a week."

Upon filing this affidavit with the company Cowles made demand for his wages, and twenty-five dollars which was due him at the time when the writ of attachment was served on the railroad company was accordingly paid him by the said company. This payment was made after the company had been served as garnishee, but before any judgment had been rendered against it as such garnishee. It was admitted that Cowles' wages did not exceed fifteen dollars a week, and it was further admitted on the trial in the Circuit Court that said Otis Cowles was not at any

time a married man or the head of a family residing with
the same, but that said garnishee at the time said Cowles
was paid on his affidavit had no knowledge of that fact,
and no information from which it had reason to believe
said affidavit was false; and that the first information said
garnishee had that said Otis Cowles was not a married
man residing with his family was when witnesses for
plaintiff swore to such fact before the justice of the peace
on the first trial.

Upon these conceded facts the cause was submitted to
the Circuit Court, a jury having been waived. At the
close of all the evidence, appellant tendered and asked the
court to hold as law the following propositions:

"A.  That when an affidavit is filed by an employee or
wage earner with his employer, stating that such wage
earner is the head of a family and residing with the same,
and such employer has no knowledge to the contrary, then
such employer is protected as against attaching creditors
in paying to such employee, after being served as garnishee
and before the rendition of any judgment against it, the
sum of fifteen dollars per week as exempt, although in
truth such employee so filing such affidavit was not the head
of a family and residing with the same.

"B.  That although said Cowles was and is not the head
of a family and residing with the same, yet having filed
with the Illinois Central Railroad Company an affidavit
stating that he was and is the head of a family and resid-
ing with the same, and said railroad company having no
knowledge to the contrary, it is not liable in these proceed-
ings, although it paid him after it was served with a writ
of garnishment and attachment, but before the rendition of
judgment against it.

"C.  That when an affidavit is filed by an employee or
wage earner with his employer, stating that such wage
earner is the head of a family and residing with the same,
and demand is made by such wage earner for his wages
after such employer has been served as garnishee, there-
upon it becomes the duty of and mandatory upon said em-

ployer, under section 14 of chapter 62 of the Revised Statutes of Illinois, to pay to such wage earner fifteen dollars per week as exempt, without waiting the determination of the issue against the garnishee. And such employer is not liable in such garnishment suit, although it appears upon the trial thereof that such employee was not in truth and fact the head of a family, residing with the same."

These propositions were refused by the court, which found for appellee and assessed plaintiff's damages at $22.25.

W. A. HOWETT and CALHOUN, LYFORD & SHEEAN, for appellant; JOHN G. DRENNAN, of counsel.

EDWARD H. MORRIS, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is urged in behalf of the appellant company that the Circuit Court erred in refusing to hold as law the propositions tendered by the company's attorneys, and first, that when Cowles made and delivered to appellant the affidavit stating that he was the head of a family and residing with the same, and was paid the wages in controversy, which money had been earned at a rate of less than fifteen dollars a week and was exempt under the statute, the company was protected as against attaching creditors, even though the affidavit was not true; and second, that there could be no valid judgment, because no demand in garnishment was served upon the garnishee prior to the commencement of the garnishment suit, as required by statute.

The statute on Garnishment, as amended and in force July 1, 1901, (R. S. 1903, chap. 62, sec. 14) provides that "the wages for service of a wage owner who is the head of a family and residing with the same, to the amount of $15.00 per week shall be exempt from garnishment." All over that sum is liable to garnishment. It further provides as follows: "Every employer shall pay to such wage earner such exempt wages not to exceed the sum of fifteen ($15.00) dollars per week of each week's wages earned by

him, when due, upon such wage earner making and deliver-
ing to his employer his affidavit that he is such head of a
family and residing with the same, notwithstanding the
service of any writ of garnishment upon such employer
and the surplus only above such exempt wages shall be held
by such employer to abide the event of the garnishment
suit."    There is no ambiguity in nor any uncertainty as to
the meaning of this language of the statute.    It is manda-
tory upon the employer and compels him to pay such
exempt wages when due upon receiving the affidavit of the
employee that he is head of a family and residing with the
same, "notwithstanding the service of any writ of garnish-
ment."    It was said in B. & O. S. W. R. R. Co. v. Mc-
Donald, 112 Ill. App. 391–396, "when such affidavit is de-
livered to the employer he cannot withhold, pending gar-
nishment litigation, such portion of the wages then due as
are exempt.    He must pay at once and, if he would protect
himself, must not only set up in his answer the facts and
make the claim, but he must, when necessary, produce the
requisite evidence in support of his answer to make the
claim good at his own peril.    If this statute is to serve its
plain purpose and have any practical effect, this must be so.
Where the employee makes and delivers the requisite affida-
vit, the whole burden of claiming and establishing the
exemption is cast upon the employer."    We concur in this,
adding, however, that we think it is clear from the statute
that this burden is borne by the employer when he pro-
duces the affidavit upon which he has made the payment
as the statute requires and shows that it meets the require-
ments of the statute.    We concur also in the language by
Mr. Justice Gest in C. & A. Ry. Co. v. Moore, 117 Ill. App.
147–148, where it is said the statute above quoted "made it
the duty of appellant, when such affidavit was made and
delivered to it, to pay to plaintiff his wages when due, not
to exceed $15.00 per week, 'notwithstanding the services
of any writ of garnishment upon' it.    Payment by appel-
lant to plaintiff after such affidavit was made and delivered
to it would have been a perfect defense to the garnishment

suit. Garnishment proceedings exist only by virtue of the statute; they had no existence at common law. The garnisheeing creditor as such has no rights except what are expressly given by the statute. The affidavit of the employee in such case is conclusive evidence to protect his employer acting in good faith against any garnishment proceeding to the extent of the exemption. Manifestly the intent of the legislature was to provide for the speedy payment to the wage earner * * * to save him the expense of * * * litigation * * * which swallows up all his wages." In the present case, however, it appears that Cowles was not in fact such a wage earner as he describes himself to be in his affidavit, that it was not true he was the head of a family and residing with the same. It is argued that the words "such wage owner" in the statute refer to the wage owner described in the first paragraph of said section 14, viz. "a wage owner who is the head of a family and residing with the same," not to a man who is not "such wage owner," but only represents himself to be such. The statute must, however, be construed with reference to its obvious purpose and intent. See A. & E. Ency. of L., Vol. 14, p. 747. This intention is very well stated in the case above referred to (B. & O. S. W. R. R. Co. v. McDonald, *supra*,) on p. 112 of the opinion, where it is said that prior to the said amendatory act of 1901 "it was an open question as to the right of the employer to withhold such payment and also as to whether he had performed his whole duty when he had set up in his answer the facts and made the claim, or whether it was not his duty, in case his answer was traversed, to support it by evidence or at least to notify the employee when such employee was not before the court, that he might have an opportunity to make the necessary proofs. While the law was in this state of uncertainty the Act of May 11, 1901, was passed," making it the duty of the employer to pay at once upon delivery to him of the necessary affidavit. The statute was enacted for a humane purpose and should receive a fair and liberal construction to effectuate that pur-

pose of the legislature. Davis v. Siegel, Cooper & Co., 80 Ill. App. 278–281, and case there cited. It is conceded in this case that appellant made the payment to Cowles in good faith, accepting the affidavit which in form was such as the statute requires as stating the actual facts. This appellant clearly not only had a right to do, but was by the language of the statute obliged to do. To require the employer to investigate in every case the truth of the sworn statement before in good faith making the payment, would defeat the evident object of the statute, and put a burden upon employers of a large number of men, which would enable persons so disposed to tie up wages on fictitious as well as *bona fide* claims, cause expense for which there would be no recompense, and afford an efficient means of persecuting employees by persons disposed to take advantage of their position. One who makes a false affidavit and thus secures money to which he would not otherwise be entitled does so at his peril, and the practice is not likely therefore to become common among employees, whom it is the purpose of the statute to protect. See Moore v. C. R. I. & P. Ry., 43 Iowa, 385. We are of opinion that the Circuit Court erred in refusing the propositions of law referred to tendered by appellant. The views expressed make it unnecessary to consider further appellant's propositions.

The judgment will be reversed without remanding.

*Reversed.*