# Charles Harris, Appellee, v. M. Montag, on Appeal of K. & S. Sales Company, Garnishee, Appellant.

## Gen. No. 31,917.

1. GARNISHMENT—*burden to prove nature of debt.* The burden of proof is on the plaintiff in garnishment to establish a garnishable debt.

2. GARNISHMENT—*burden to show exemption.* The burden is on a garnishee to show, as against proof of a garnishable debt, the right to any reduction therefrom for exemptions of salary of an employee under Cahill's St. ch. 62, ¶ 14.

3. GARNISHMENT—*exemption of salary of employee.* Under Cahill's St. ch. 62, ¶ 14, wages or salary earned by an employee are not exempt from garnishment unless the employee is the head of a family and residing with the same.

4. GARNISHMENT—*exemption of wages earned after service of writ.* Where an employee is not the head of a family and does not reside with the same, his employer must, when garnisheed, answer under Cahill's St. ch. 62, ¶ 5, for any wages or salary earned between the dates of service and answer.

5. GARNISHMENT—*contingent credits in employee's commission account.* Where a garnishee credits an employee with commissions subject to deduction for losses which may occur from confiscations and uncollectible accounts, if such losses are undeterminable before the date of answering the interrogatories, such credits constitute under the contract a contingent liability and are not subject to garnishment.

6. GARNISHMENT—*burden on plaintiff to remove contingency from debt garnished.* Where a garnishee credits an employee with commissions subject to deduction for losses which may occur from confiscations and uncollectible accounts, the burden is on the plaintiff to furnish proof by which the losses can be determined.

7. GARNISHMENT—*estoppel of employer crediting employee's account with commissions.* A garnishee charging collections made by an employee to the employee's commission account as commissions earned, held estopped from claiming that the employee was not entitled to retain such money on the ground that the collections were unauthorized.

8. GARNISHMENT—*right of garnishee to set off contingent liability of employee to him.* Where a garnishee credits an employee with commissions contingently subject to losses, the employer cannot set off an overdraft payment as being subject to the losses, where the losses are not determinable at the time of garnishment.

Appeal by garnishee from the Superior Court of Cook county; the Hon. John J. Sullivan, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1927. Affirmed. Opinion filed December 27, 1927.

Sonnenschein, Berkson, Lautmann & Levinson, for appellant; Henry S. Moser, of counsel.

Bernstein, Zolla & Bernstein, for appellee; Louis M. Kaplan, of counsel.

Mr. Presiding Justice Barnes delivered the opinion of the court.

This is an attachment suit brought against defendant Montag in which appellant was summoned as garnishee. A judgment was entered against each. That against the garnishee is appealed from.

The garnishee was served December 3, 1923, filed its formal answer January 11, 1924, and an answer to the interrogatories March 11, 1924, pursuant to rule of court. Each answer denies that the garnishee had, at the time of the service of the writ or at any time since, any property of said Montag in its possession or charge. The defense is also made that Montag is an employee of the garnishee and that it is not liable to answer for any money not earned by him at the time of service of the writ, and that the court was without jurisdiction to enter judgment against it because there was not a compliance with the exemption statute as to making a demand and leaving and filing a copy thereof as required by section 14 of the Garnishment Act, Cahill's St. ch. 62, ¶ 14.

The answer was traversed and after a hearing on the issues raised and submission of the case with propositions of law to the court it found that the garnishee was indebted to the judgment debtor in the sum of $2,000, and entered judgment against it therefor.

Assuming the burden of establishing a debt that was garnishable, as it was required to do (*Manowsky v. Conroy,* 33 Ill. App. 141), plaintiff introduced two letters from the garnishee to Montag, showing that Montag was an employee on a commission basis, and also the garnishee's ledger sheets showing the commission account covering the period between the date of service and the answer to the interrogatories.

The first letter, dated September 1, 1923, reads:

"In connection with our new commission arrangement (20% of the remittance instead of 50% of the gross profits) wish to advise that your commissions will be due and payable as follows:

"Fifty per cent of said commissions to be paid by us at the time remittances are received from your customers, the remaining fifty per cent to be paid to you one year after date of the remittances on which said commissions are payable.

"It is understood * * * that your compensation is payable only in commissions as hereinbefore set forth, and that any advancements made by us to you are to be charged against your commissions."

The other letter, dated October 18, 1923, modifies the contract to "20% of the remittance and bonus feature," the plan to start as of October 1, "all remittances received prior to that time to be handled on the old basis" of a "50-50 commission plan." After explaining the bonus plan, which allowed Montag 5 per cent for every $500 worth of commissions earned, it continues:

"In connection with the above arrangement, you will not be obliged to stand any losses resulting from any so called 'bad breaks.'

"You will receive your full 20% commission on all remittances received from your accounts, regardless of profit or loss taken thereon, excepting losses resulting from confiscations and uncollectable accounts, that is, all accounts over four months old which will be

charged to profit and loss and your commission account will be debited 50% of the cost of the assortment. When subsequent remittances are received from delinquent accounts proper credits will be given you.''

After introducing such evidence and testimony by the garnishee's vice president explanatory of the status of Montag's commission account as shown on such sheets, plaintiff rested.

For the purpose of estimating the liabilities for possible losses chargeable to Montag under the contract the garnishee introduced evidence of the selling price and cost of merchandise sold and shipped, and evidence explanatory of the ledger sheets, and also Montag's ''sample account'' showing charges against him for samples of merchandise delivered to him by the garnishee and credits therefor when returned, which discloses a debit balance in said account of $778.40 against Montag on March 11, 1924.

While the burden of proof was on plaintiff, as before stated, to establish a garnishable debt, the burden was on the garnishee to show as against any proof thereof the right to any reduction therefrom for exemptions under section 14 of the Garnishment Act, Cahill's St. ch. 62, ¶ 14. To establish such right it was necessary to prove that Montag was the head of a family and residing therewith. There was no such proof.

Appellant construes said section as not requiring a garnishee to answer for wages or salary earned by the employee subsequent to the service of the writ, regardless of whether he is the head of a family and residing with the same, citing as authorities to support the proposition *Davis v. Siegel, Cooper & Co.*, 80 Ill. App. 278; *Mutual Service Corp. v. Hugren*, 225 Ill. App. 216; *First Nat. Bank of Knightstown v. Hosier*, 234 Ill. App. 605.

Whether or not an employee working under a contract for commissions may be said to come within the provisions of said section need not be considered in view of the absence of proof that Montag was the head of a family and residing with the same, as he must be to be entitled to exemptions.

It was only with reference to one so entitled that the court held in the *Davis* case, *supra,* that unearned wages after the date of service of the garnishee were not subject to garnishment, and the statute now so provides. This is true also with respect to the cases of *Bliss v. Smith,* 78 Ill. 359, and *Hoffman v. Fitzwilliam & Sons,* 81 Ill. 521, relied on in the *Hugren* and *Hosier* cases, *supra,* as excluding *any* wage earner from the application of section 5 of the act, Cahill's St. ch. 62, ¶ 5, which requires any person summoned as a garnishee to answer for any indebtedness due and owing up to the date of answer, which we interpret as including the date of answering interrogatories. *Young v. First Nat. Bank of Cairo,* 51 Ill. 73; *Hanover Fire Ins. Co. v. Connor,* 20 Ill. App. 297.

It was held in the *Hugren* and *Hosier* cases, decided in 1922, that under a liberal construction of the statute and on grounds of public policy the garnishee need not in any case answer as to the earnings of "the wage earner" after the service of the writ, and, apparently, regardless of whether he comes within the exemption provision of the act or not. The particular clause of section 14, Cahill's St. ch. 62, ¶ 14, on which the ruling was based, and which is found in the second paragraph of the section, then read:

"No employer so served with garnishment shall in any case be liable to answer for any amount not earned by the *wage earner* at the time of the service of the writ of garnishment."

In 1923 the statute was amended and substituted for the quoted provision the following:

"No employer so served with garnishment shall in any case be liable to answer for any amount not earned by such employe at the time of the service of the writ of garnishment."

The exemption clause is in the first paragraph of the section. Before amendment it read:

"The wages for the services of a wage earner who is head of a family and residing with the same to the amount of fifteen (15) dollars per week shall be exempt from garnishment. All above the sum of fifteen (15) dollars per week shall be liable to garnishment."

As amended in 1923, it reads:

"The wages or salary for services of an employe who is the head of a family and residing with the same to the amount of fifteen dollars per week, shall be exempt from garnishment. All above said exempt amount shall be liable to garnishment."

In the second paragraph (which contains the clause in question) wherever the word "employe" appears it is qualified by the word "such," thus unmistakably referring back to the "employe" mentioned in the first paragraph, namely, one who is head of a family and residing with the same, as its antecedent.

Before the amendment of 1923 it was held in effect in *Howard Co. v. Miller,* 123 Ill. App. 483, and *Heffernan for use of Rittenhouse & Embree Co. v. Breen & Kennedy,* 207 Ill. App. 344, that there must be a claim of exemption under the statute to release the garnishee from answering for wages earned after service of the writ.

Because of such conflict of authorities on the subject, the legislature may be presumed to have passed the amendment of 1923 to remove all doubt that where a wage earner or employee on a salary was not entitled to exemptions under the first paragraph of section 14, Cahill's St. ch. 62, ¶ 14, his employer must, when garnisheed, answer under section 5 of said act, Cahill's St. ch. 62, ¶ 5, for any wages or salary earned

between the dates of service and answer. The unequivocal language of the amendment clearly discloses such intent, and throughout the entire section points clearly to only "such employe" as is mentioned in the first paragraph thereof, namely, one who is the head of a family and residing with the same. Montag not having been shown to be such, the garnishee cannot be released from answering for money earned or credits given to him subsequent to the service of the writ up to March 11, the time of answering the interrogatories.

As the policy of the law (which rests wholly upon the intendments of the statute itself) is to enable an employee to reserve from garnishment a part of his wages for support of his family, and does not extend to one not residing with his family, it is inconsistent to hold that it is within its policy to protect one not the head of a family, or that the act may be extended on the theory of liberal construction to include *any one* rendering services for wages or a salary.

But it is urged by appellant that under the terms of the contract as modified by the letter of October 18, a part of the credits given to Montag on the garnishee's books are uncertain and contingent and, therefore, not subject to garnishment.

It appears from said commission account that on December 3, 1923, the date of the service, Montag had a credit of $10,166.78 and a debit charge of $6,319.91, leaving a balance to his credit of $3,846.87. Under the contract, as apparently conceded, only one-half of Montag's commissions on his sales was due him at the time of remittances therefor. That half appears by such charges to have been paid, and the other half was subject to deductions for losses resulting from confiscations and uncollectible accounts. If such losses were undeterminable before March 11, such credits constituted under the contract a contingent liability and were not subject to garnishment. *(Pressed Steel Equipment Co. v. Thornburgh Pressteel*

*Co.,* 228 Ill. App. 1.)   At any rate there was no proof by which the losses were or could be determined.   The burden was on plaintiff to furnish it.   And, too, as the record leaves it uncertain whether all of said credits arose under said contract, the burden also rested on plaintiff after introducing such contract and the commission account thereunder to remove any such uncertainty.   It was bound to establish an absolute indebtedness.   The same contingencies characterize the balance of credits as shown on March 11, the date of answering the interrogatories.

But it appears from the commission account, in spite of such contingencies, that after the service of the writ and before March 11, the garnishee charged Montag's commission account with an unexplained check for $200 on December 6, 1923, and at subsequent dates with moneys amounting to $3,026.41, collected by Montag from his customers and retained by him, a total of $3,226.41.   Appellant argues that such collections were not authorized and were made in violation of its instructions.   But in view of its retention of Montag in its employ long after its knowledge of such practice and its continuous recognition thereof from a time long prior to the date of the contract, it is estopped from claiming that he was not entitled to retain such moneys.   It must be deemed to have acquiesced in the practice and to have recognized Montag's right to the collections as commissions earned, else they would not have been charged to his commission account, or the practice would have been stopped.   Such charges, therefore, cannot be regarded otherwise than in the light of voluntary payments towards Montag's commissions in disregard of appellant's statutory obligation to withhold such payments after garnishment and before answer.   *(Paisley for use of Hooper v. Park Fireproof Storage Co.,* 222 Ill. App. 96; *Hudson for use of Topp v. Hudson Motor Co. of Illinois,* 238 Ill. App. 391.)   As there is nothing

Harris v. Montag, 247 Ill. App. 89.

in the evidence that warrants treating these payments either as advancements or a set-off the garnishee must be held to have recognized them as an indebtedness at the time they were charged to the commission account.

There are a few other items of payment by check but they are explained as having been given for traveling expenses.

But while as against such recognized indebtedness of $3,226.41, as aforesaid, appellant is entitled to a set-off of $778.40, the balance due it from Montag as shown by said "sample account," there still remains a balance greater than the judgment of $2,000, the full amount claimed as damages.

Appellant also claims the right to set off what it terms "an overdraft" by Montag at the time of service of the garnishee because Montag's total debits on December 3, 1923, exceeded one-half of his entire credits at that date. The theory, as we understand it, is that if the losses for which Montag was chargeable exceeded his book credits at time of an adjustment of the account, he would be liable to return moneys paid him on remittances. But if so, not until an adjustment was had could it be determined whether at the time of garnishment he was overdrawn. That not being determinable at the time of garnishment the garnishee is in no better position to assert a claim for "overdraft" than is the garnishor to reach the contingent credits on which the claim depends.

In view of our conclusions we need not discuss alleged errors in the rulings of the court on the propositions of law submitted. Accordingly the judgment will be affirmed.

*Affirmed.*

GRIDLEY and SCANLAN, JJ., concur.