General Finance Corporation, Plaintiff-Appellee, **v.** Thomas Rainer, Defendant.
Fairbanks Morse & Co., an Illinois Corporation, Garnishee-Defendant-Appellant.

## Gen. No. 47,508.

First District, Second Division.

December 31, 1958.

Rehearing denied February 20, 1959.

Released for publication February 20, 1959.

Anan Raymond, William B. Davenport, of Chicago
(Thompson, Raymond, Mayer, Jenner & Bloomstein,

William D. Randolph, of counsel) for garnishee-defendant-appellant.

Louis P. Yangas, Albert E. Bennett, of Chicago (law offices of Frank J. Csar, of counsel) for plaintiff-appellee.

JUSTICE KILEY delivered the opinion of the court.

This is a garnishment proceeding begun in August, 1956, to collect upon a judgment against a non-resident employee. The trial court on March 20, 1958, entered judgment in favor of the use-plaintiff, General Finance Corp., and defendant Fairbanks Morse Co., garnishee, has appealed.

There is no question raised about the underlying confession judgment against the employee Rainer, and the parties either stipulated to or do not dispute, the essential facts.

Rainer worked for Fairbanks Morse Co. from July 11, 1956 to February 17, 1957; he is a householder residing in Wisconsin and entitled, by virtue of section 21 of our Exemptions Act (Ill. Rev. Stat. 1955, ch. 52) to the exemption provided by Wisconsin law; his wages subject to garnishment, over the amount exempted under Wisconsin law, are $329.22; and General Finance is entitled to judgment for that sum if the trial court ruled properly on the motion of Fairbanks Morse to dismiss.

The motion to quash the garnishment summons and dismiss the proceedings was based on the ground that a written demand was not made on Rainer under section 14 of the Garnishment Act (Ill. Rev. Stat. 1955, ch. 62) and that the judgment was therefore void. The motion was denied. If the written demand was essential the trial court should have sustained the motion.

Plaintiff contends that section 14 "clearly" excludes Rainer from its benefits, since it is intended only for residents of Illinois.

194

 It must be kept in mind that "The primary aim of statutory construction is to ascertain the legislative intent by examining not only the language employed, but the evil to be remedied and the end to be obtained," People ex rel. Roan v. Wilson, 405 Ill. 122, 127. The Garnishment statute was enacted for a "humane purpose: for the benefit of the debtor's family as well as himself, and should receive a fair and liberal construction, that it may effectuate the beneficial object the legislature had in view," Bliss v. Smith, 78 Ill. 359, 361 (1875); Illinois Cent. R. Co. v. Cowles, 127 Ill. App. 456, 461–462 (1906). Traditionally these statutes have been given a liberal interpretation in favor of the debtor, and the courts hold consistently that unless the terms of the statute are strictly followed the debtor will prevail, Sutherland on Statutory Construction (3rd Edition) page 369. It is said that the chief objectives of the exemption laws are: (1) insuring of a means of livelihood and subsistence to the debtor; (2) protection and welfare of his family; (3) the prevention of any possibility that the debtor or his family might become a public charge upon the state. Ibid, pp. 371–372.

Section 14 provides, so far as now pertinent:

"The wages or salary of an employee who is the head of a family and residing with the same, to the amount of $35.00 per week . . . shall be exempt from garnishment . . . . No employer so served with garnishment shall in any case be liable to answer for any amount not earned by such employee at the time of service of the writ. . . .

"Before bringing suit a demand in writing shall be served upon the employer and the employee for the excess above the amount herein exempted. . . ."

Plaintiff argues that the term "such employee" refers to an employee exempted "to the amount of $35.00 per week" and that since Rainer's Wisconsin exemption, to which he was entitled under Wisconsin law,

195

is $25.00, he is excluded from section 14 and not entitled to the "demand in writing." We disagree for we think the term "such employee" refers to an employee "who is the head of a family" etc., Harris v. Montag, 247 Ill. App. 89. The phrase "to the amount of $35.00 per week" merely modifies "wages or salary."

There is no express exclusion of non-residents from the terms of section 14 and nothing in a literal interpretation which discloses an intention to exclude non-residents.

Plaintiff argues that the legislature divided employees into two classes in the Garnishment Act, placing resident employees who are heads of families in section 14, and non-resident employees who are heads of families together with non-resident and resident employees who are not heads of families in section 5 where no demand is required before garnishment. This argument would force into the language of section 5 a classification not warranted by the language or by logic. Also the Illinois legislature would have had to intend to treat non-resident heads of families with less concern than Illinois' own. The fact that in 1957 the legislature brought employees not heads of families, etc., within section 14 does not mean that this class was lifted out of section 5. This meaning would assume the truth of the argument as to classification that we have rejected.

There is no merit either in the contention that if section 14 includes non-resident heads of families there would have been no need for section 21 of the Exemptions Act, Ill. Rev. Stat., 1955, ch. 52. That section provides that whenever the wages of a non-resident are sought to be subjected to garnishment in this state they shall be subject to the same exemption as is allowed by the state in which the employee resides, if they were earned and payable in that state. Section 21 does not distinguish between heads of families and non-

196

heads of families of non-residents nor does it provide procedures. It presupposes the provisions of the Garnishment Act.

We think sections 5 and 14 of the Garnishment Act and section 21 of the Exemptions Act construed together make up a consistent plan. Section 5 does not "govern" employees. It is a procedural section covering all garnishees employing debtors whether they be heads of families or not, or residents or not. Section 14, as it stood in 1955, is for the protection of the families of employees and precludes employees without families from its benefits. Section 21 of the Exemptions Act is a necessary specific exercise of comity leaving the amount or classes of exemptions to the state where the employee resides.

Our Supreme Court in Mineral·Point R. Co. v. Barron, 83 Ill. 365 (1876) construed section 14, though under a set of facts different from those in the case before us. Barron, the wage earner, was a resident of Wisconsin and the garnishee an Illinois resident. It was contended that Barron, a non-resident, was not entitled to the benefits of section 14. The court decided he was entitled to the exemption in section 14, since the legislature would have employed language indicating otherwise had it so intended and the plain language indicated no intention to confine section 14 to residents. In Fuller v. Bridgeport Wood Finishing Co., 203 Ill. App. 227, the court reversed judgment against the garnishee on the grounds that a judgment for wages not earned at the time of service of the writ was "in direct contravention of section 14." In view of plaintiff's concession that the statute cannot be interpreted piecemeal, the inference from the Fuller decision is that the non-resident was entitled to all the benefits of section 14.

Plaintiff relies heavily on R. Jackson & Co. v. Republic Iron and Steel Co., 141 Ill. App. 453. It argues that the Fuller case is poor authority since the judg-

197

ment on appeal was "undefended"; and that the court must have known of the Jackson case and considered the question of "demand" on a non-resident settled there because the point was raised in the briefs in Fuller and is jurisdictional and was "by-passed." The Jackson case was cited in Fuller and both cases were written by the same judge so the court did know of the Jackson decision. And the "demand" point was raised in the Fuller case and is jurisdictional.

But if the court in Fuller considered the "demand" point settled by the Jackson decision it should not have done so. In the Jackson case an Attachment Writ, before judgment, was served on the Republic Steel Company under section 21 "Garnishment" of the Attachments Act, Ill. Rev. Stat. ch. 11, 1907 (Hurd). Under that section the creditor is not required to make demand upon either the debtor or the employer, and the Attachments Act extends to any creditor having a money claim against anyone. The reason for the absence of the demand requirement in this section is obvious. The attachment writ may issue at the time of suit and is intended to hold property of the debtor until the suit is determined. The debtor must be summoned, has knowledge therefore of the proceedings and if judgment is against him has no cause to complain that money or property due him has been withheld, and should judgment be in his favor he is protected by the attachment bond.

The Republic Company argued on appeal in the Jackson case that the trial court should have dismissed the case for lack of demand under section 14 of the Garnishment Act, but the Garnishment Act was not involved in the case. The Jackson Company joined in this misapprehension and argued that no garnishment demand under section 14 was required for non-residents. The court compounded the misapprehension by passing on an issue which was not based on the record, saying (without citing authority), "It is our

198

opinion that the provisions of the Garnishee Statute have no application to the case of a non-resident defendant, and we think it is equally clear that the measure of exemptions allowed by our statute to the heads of families residing with them *within this state* (our italics) is restricted in its operation to Illinois." The words used by the court "within this state" are not in section 14. It is because they are not that we have held the legislature did not express the intention to exclude non-residents. Furthermore what the court said was dictum since it was not necessary to the decision, as the court finally decided that the trial court did not have jurisdiction over the garnishee because of wrong venue. The dictum, moreover, as we have pointed out, presupposes an issue not in the record.

It is our opinion that section 14 required General Finance to serve a demand in writing on Rainer. This interpretation does not impute to the legislatures of 1897 and 1901, the intention to "mischievously and impishly" compel creditors to "travel" thousands of miles to serve wage demands on employees in Miami, Florida, or Seattle, Washington, or even Nome, Alaska. The world has shrunk since the early days of garnishment and travelling from Chicago to Cairo, Illinois was more difficult at the turn of the century than travelling from Chicago to Nome in 1955. There was no need, however, for General Finance to "travel" to Beloit, Wisconsin, to serve a written demand. The Civil Practice Act, Ill. Rev. Stat., 1956, ch. 110, sec. 17(2), in effect when the garnishment suit was begun, and a contemporary decision with respect to personal service on non-residents, shows the lack of merit in the argument based on the practicalities of our interpretation. Nelson v. Miller, 11 Ill.2d 378. The trend moreover is toward expansion of jurisdiction. See Expanded Concepts of Jurisdiction Over Non-residents, 31 Notre Dame Lawy. 223.

■■ The purpose of the demand is to enable the employee to file his affidavit with the employer to claim the amount of the exemption afforded him under the law, Chicago & Alton R. Co. v. Moore, 117 Ill. App. 147. The purpose of the affidavit is to (a) provide for speedy payment to the wage earner of his wages to save him delay and expense of suing the employer, and (b) to protect the employer acting in good faith who pays over to the creditor the net after the exempted wages, Chicago & Alton R. Co. v. Moore, 117 Ill. App. 147, 149; Illinois Central R. R. Co. v. Cowles, 127 Ill. App. 456.

We think that if the legislature intended to exclude non-residents from the benefits of section 14 it would have used language to show that intention. The language used does not express, and does not reasonably imply, the intention. And there is no authoritative precedent to impel us to conclude that there was the intention.

■ For the reasons given we are of the opinion that section 14 of the Garnishment Act required a written demand upon the non-resident employee, Rainer; that in the absence of that demand the judgment against Rainer's employer, Fairbanks Morse, was void (section 14); and that the trial court erred in denying the motion to dismiss. The judgment is reversed and the cause is remanded with directions to dismiss the garnishment proceedings.

Reversed and remanded with directions.

LEWE, P. J. and MURPHY, J., concur.