**In re Robert JOHNSON, Debtor.**

**Robert JOHNSON, Plaintiff,**

**v.**

**FORD MOTOR CREDIT CO., Defendant.**

Bankruptcy No. 85 B 6575. Adv. No. 85 A 606.

United States Bankruptcy Court, N.D. Illinois, E.D.

Feb. 6, 1986.

Zalutsky & Pinski, Ltd., Chicago, Ill., for Johnson.

Law Offices of Lawrence Friedman, Steven J. Sensibar, Chicago, Ill., for Ford Motor Credit Co.

## MEMORANDUM AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

The adversary defendant, Ford Motor Credit Co. ("FMC"), has filed a motion requesting the Court to reconsider its Memorandum and Order of October 18, 1985, *In re Johnson*, 53 B.R. 919 (Bankr.N.D.Ill. 1985). This dispute centers around the debtor's attempt to recover $203.68 in wages held by his employer pursuant to a wage garnishment in favor of FMC by using 11 U.S.C. §§ 522(f)(1) and 522(g). In the earlier decision, this Court denied FMC's motion for summary judgment on the grounds that FMC failed to prove that the debtor lacked an interest in the garnished wages as required by §§ 522(f)(1), (g), and (h). FMC now asks the Court to reconsider that conclusion.[1]

---

**1.** While it might appear that this Court has devoted an inordinate amount of time and ef-

■ The motion for reconsideration focuses strictly on § 522(f)(1).[2] FMC questions whether the Court properly interpreted Illinois law in concluding that the debtor might be able to recover the garnished wages under § 522(f)(1). Section 522(f)(1) permits a debtor to avoid a lien if four requirements are met: (1) the lien the debtor seeks to avoid is a judicial lien; (2) the debtor claims an exemption in the property to which the debtor is entitled under § 522(b); (3) the creditor's lien impairs the debtor's exemption; and (4) the debtor has an interest in the property. 11 U.S.C. § 522(f)(1). *See also In re Webb,* 49 B.R. 646, 650 (Bankr.E.D.Va.1984).

In its prior decision, the Court found that the debtor satisfied the first three elements and that genuine issues of fact regarding the fourth element, the debtor's interest in the property, precluded summary judgment for either party. In its motion to reconsider, FMC does not challenge the Court's findings as to the first, third, and fourth requirements of § 522(f)(1). FMC argues only that this Court erroneously held that the debtor satisfied the second requirement, the debtor's right to assert an exemption in the property in question, and FMC's summary judgment motion should thus have been granted. Simply stated, FMC contends that a debtor may not assert an exemption in garnished wages under Illinois law.

■ In the earlier decision, the Court, after analyzing the relevant Illinois statutes and case law, held that the debtor could assert an exemption in garnished wages, at least until such wages had actually been turned over to the garnishing creditor.[3] Specifically, the Court held that the debtor could claim the garnished wages in the hands of his employer as exempt by using the Illinois personal property "wild card" exemption, § 12–1001(b),[4] under which a debtor can claim as exempt "[t]he debtor's equity interest, not to exceed $2,000 in value, in *any other property.*" (Emphasis added). The Court interpreted the language "any other property" as allowing a debtor to claim garnished wages as exempt. *In re Johnson,* 53 B.R. at 923. The Court found support for this conclusion in *In re Barker,* 768 F.2d 191 (7th Cir.1985). In *Barker,* the Seventh Circuit held that the phrase "any other property" in § 12–1001(b) must be interpreted broadly to favor debtors. *Id.* at 196. Consequently, the *Barker* court allowed a debtor to stack his exemptions, i.e. to use the $2,000 wild card exemption to exempt the equity remaining in his car after he had used the $1,200 automobile exemption set out in § 12–1001(c). *Id.*

FMC now contends that this Court misinterpreted the wild card exemption and *Barker.* A debtor, according to FMC, may only use § 12–1001(b) to exempt up to $2,000 of the debtor's equity interest in any other property *specifically allowed to be claimed as exempt under the Illinois exemption statute alone.*[5] In FMC's view,

fort to a dispute involving only $203.68, in fact, this case is representative of a chronic problem. My brethren in the United States Bankruptcy Court for the Northern District of Illinois and I have repeatedly been asked to rule on whether a debtor can use §§ 522(f)(1), 522(g), and (h) to recover garnished wages as exempt. The Court commends the parties in this case for their spirited advocacy despite the small dollar amount in issue.

2. In its prior decision, the Court held that the debtor could not use §§ 522(g) and (h) on the facts of this case because the $600 limit of § 547(c)(7) would prevent a trustee from avoiding this $203.68 garnishment as a preference. FMC, of course, does not ask the Court to reconsider that conclusion.

3. *In re Johnson,* 53 B.R. at 923. Because Illinois has opted out of the Bankruptcy Code substantive exemption provision, § 522(d), Illinois debtors are confined to those exemptions available to them under Illinois law. *See* 11 U.S.C. § 522(b); Ill.Ann.Stat. ch. 110, § 12–1201 (Smith-Hurd 1985).

4. Ill.Ann.Stat. ch. 110, § 12–1001(b) (Smith-Hurd 1985).

5. Under § 12–1001, which is the primary Illinois personal property exemption provision, an individual debtor may claim the following specifically identified types of personal property as exempt, subject to some restrictions: necessary wearing apparel; bible; school books; family pictures of the debtor and the debtor's depend-

because wages are not specifically exempt under § 12–1001, but rather can be claimed as exempt under § 12–803 [6] of the Illinois Code of Civil Procedure, in the portion of that Code dealing with wage deductions rather than the portion dealing with exemptions, the debtor cannot use the wild card exemption for garnished wages. The argument continues that since § 12–803 exempts only 85% of a debtor's gross wages (in most cases), that percentage is the most the Illinois legislature intended a debtor to be able to shield from a garnishing creditor like FMC. FMC argues that to allow a debtor like Johnson to use the $2,000 wild card exemption to exempt the 15% of wages not exempt under § 12–803 effectively wipes out FMC's ability to ever garnish *any* of a debtor's wages.

As support for its position, FMC refers to the fact that *Barker* permitted the debtor to stack the wild card exemption on top of the automobile exemption provided for in § 12–1001(c). FMC argues that *Barker* should not be extended to allow a debtor to stack the wild card exemption on top of an exemption provided for in another statutory section, like § 12–803 of the wage deduction statute.

■ The problem with accepting FMC's argument is that it runs contrary to the plain meaning of the statute. The only reasonable interpretation of the phrase "any other property" is that it means just that, *any* other property, i.e., that a debtor may claim the wild card exemption in any other property without limitation.[7] If the legislature had intended to limit the wild card exemption to operate only within § 12–1001, it could have stated so simply enough by providing that the debtor could exempt up to $2,000 in "any other *such* property." The Illinois wild card exemption contains no such restriction, and this Court refuses to read one into the statute, particularly in light of *Barker*'s directive to interpret § 12–1001 in a broad fashion to favor debtors. It is true *Barker* adjudicated the stacking of a wild card exemption upon an exemption listed in § 12–1001. However, the *Barker* court gave no weight to that fact. The Seventh Circuit did not limit its holding to such a situation, as FMC suggests. To the contrary, *Barker* mandates our conclusion that § 12–1001(b) may be used to claim *any nonbusiness personal property* as exempt, whether or not that property appears in the list of specific personalty exempted in § 12–1001 or in any other Illinois exemption provision.[8]

*Barker*'s interpretation of Illinois exemption law is nothing new. The Seventh Circuit in *In re Feilchenfeld*, 99 F.2d 710

ents; automobile; implements, professional books or tools of the debtor's trade; professionally prescribed health aids; life insurance annuities; various financial benefits; alimony support payments; pension plan payments; crime victim reparation law awards; wrongful death payments; life insurance payments; and personal injury payments. In addition, as previously noted, this same statutory provision contains a "wild card" provision allowing each individual debtor to claim up to $2,000 in "any other property" as exempt. Ill.Ann.Stat. ch. 110, § 12–1001(b) (Smith-Hurd 1985).

**6.** Ill.Ann.Stat. ch. 110, § 12–803 (Smith-Hurd 1985).

**7.** The only specific restriction on the wild card exemption set out in § 12–1001 is that "[t]he personal property exemptions set forth in this Section shall apply only to individuals and only to personal property which is used for personal rather than business purposes." It has not been alleged that the debtor will use the wages subject to the wage deduction order for business rather than personal purposes. Furthermore, it is clear from the introductory sentence to § 12–1001 that the wild card exemption is limited to personal property of a debtor. Illinois law contains another provision providing a $7,500 exemption for real property of a debtor used as a residence. See Ill.Ann.Stat. ch. 110, § 12–901 (Smith-Hurd 1985). The question of whether the wild card exemption could be used to increase the exemption for personal property used as a residence, e.g., the beneficial interest in a land trust, from $7,500 to $9,500 is not now before the Court.

**8.** Thus, it is clear that a debtor can use the $2,000 wild card to exempt things that nowhere appear on the § 12–1001 list at all or in any other Illinois exemption provisions, such as cash in a bank account or the right to receive an income tax refund. *See In re Cusanno,* 17 B.R. 879, 881 (Bankr.E.D.Pa.1982); *In re Barnes,* 14 B.R. 788, 790 (Bankr.N.D.Tex.1981); *In re Schuler,* 13 B.R. 478, 480 (Bankr.D.Mont.1981).

(7th Cir.1938) broadly interpreted ch. 52, § 13 of the Illinois exemption statute, the predecessor of § 12–1001, and refused to restrict the wild card exemption to tangible property in the absence of specific statutory language. The Court's reasoning in that case is particularly relevant here:

> The legislature could easily have restricted the [wild card exemption] to tangible property by so stating. The fact that it did not so limit the selection of exempt property is significant and impels us to the conclusion that it did not mean to restrict the selection. The terminology "other property" is very broad and must be held by us to include intangible as well as tangible property, where not specifically excluded by statute.

*Id.* at 712.

■ Moreover, the result the Court reaches seems to be mandated by *Matter of Smith,* 640 F.2d 888 (7th Cir.1981). In that case, the Seventh Circuit was asked virtually the same question the Court is asked in this case, i.e. whether the phrase "any property" in the § 522(d)(5) Bankruptcy Code wild card exemption should be read to be limited to the § 522(d) specific property list, or whether it should be given its literal meaning and applied to any property regardless of whether or not otherwise exempt. The *Smith* court concluded that the legislative purpose behind § 522 mandated the broader reading. *Smith,* 640 F.2d at 891. The fact that Illinois has since opted out of § 522(d) does not alter the congressional purpose behind § 522. The purpose of § 522 remains to foster a debtor's fresh start. Therefore, the language of the Illinois wild card provision, which is virtually identical to that of § 522(d)(5), should be given a similar broad and logical interpretation to advance the purposes underlying both Illinois and Bankruptcy Code exemption law.[9]

As previously noted, FMC alleges that our conclusion "will have effectively done away with wage deduction in Illinois." FMC's Motion to Reconsider at 4. Its argument is that debtors will be allowed to exempt up to 85% of their wages under § 12–803 and then use § 12–1001(b) to exempt the remainder that is subject to wage deduction. There is no question the decision in this case will allow some debtors to exempt 100% of their wages and thus avoid garnishment by stacking these two exemptions. However, there are several observations worth making in that regard. First, this result not only is warranted by the clear statutory language and Seventh Circuit case law, such as *Barker* and *Smith,* but in fact is mandated by those authorities. Second, the overall statutory pattern supports this result. Section 12–803 states that the "maximum wages ... subject to collection under a deduction order" shall not exceed 15% of the debtor's gross weekly pay. This language clearly does not prohibit debtors from *exempting more* than 85% of their wages. It only prevents an employer from *deducting more* than 15% of their wages. This statute is an exemption statute. It protects debtors and their families, not creditors, as FMC claims. *Bliss v. Smith,* 78 Ill. 359, 361 (1875); *General Finance Corp. v. Rainer,* 20 Ill. App.2d 192, 195, 155 N.E.2d 833, 835 (1st Dist.1958); *Illinois Central Railroad Co. v. Cowles,* 127 Ill.App. 456, 461–62 (1906). As a result, it is wholly consistent with § 12–803 for this Court to permit debtors to exempt more than 85% of their wages by additionally claiming the wild card exemption.

Third, it is the clear intent of § 12–1001 to allow a debtor to retain an estate of up to $2,000 in personal property over and above the specific list of personal property contained in that provision. Personal property exceeding the specific personal property exemptions plus $2,000 in any other personal property the debtor chooses should be made available to creditors. In other words, the debtor should be allowed to save

**9.** In fact, the only difference between the two for purposes of this case is that § 522(d)(5) refers to "any property" while the Illinois wild card refers to "any *other* property." The word "other" seems to clearly allow a debtor to go outside of the exemption law itself to find personal property to claim as exempt.

$2,000 *and no more* under the wild card exemption. The Court's interpretation of § 12–1001 reaches exactly that result. The debtor in this case will be able to keep up to $2,000 in personal property, including the garnished wages, as exempt and no more. If his equity interest in his personal property other than that which is otherwise exempt exceeds $2,000 in value, FMC and his other creditors will be able to realize on their claims from those assets. If the debtor's equity interest in all of his personal property other than that which is otherwise exempt does not exceed $2,000, the debtor will get to keep all of it, including the garnished wages, to the exclusion of his creditors. That is the precise result that both Congress in § 522 and the Illinois legislature in § 12–1001 intended.

FMC argues that this result effectively wipes out wage garnishments in Illinois. That is simply not true. It only affects wage garnishments where the debtor's interest in nonexempt personal property does not exceed $2,000. Where the debtor's nonexempt personal property exceeds $2,000, the debtor will have to choose between saving wages and saving other property. *See* § 12–1002. In effect, the poor and destitute, i.e. those without significant additional assets, are protected as are their families. Those with significant additional assets are not protected. This appears to be a rational legislative scheme, and the Court sees no reason not to implement it.

■ Finally, the Court cannot accept FMC's contention that a debtor may not stack the wild card exemption on top of the wage deduction exemption because § 12–803 lacks language specifically *allowing* a debtor to do so. FMC's restrictive reading is inappropriate. Section 12–803, like § 12–1001, must be construed broadly to favor debtors. *See Bliss v. Smith*, 78 Ill. 359, 361 (1875); *Davis v. Siegel, Cooper & Co.*, 80 Ill.App. 278, 279 (1899). *See also State*

*Bank of Antioch v. Nelson*, 132 Ill.App.3d 120, 122, 87 Ill.Dec. 476, 478, 477 N.E.2d 77, 79 (2d Dist.1985). The Court finds much more persuasive the lack of language in § 12–803 *prohibiting* the stacking of exemptions.

The statutory history of both §§ 12–903 and 12–1001 supports the holding that the debtor may claim the wild card exemption in garnished wages. Section 12–803 was enacted as part of the new Illinois Code of Civil Procedure, effective July 1, 1982. Prior to that time, wage deductions were governed by Ill.Ann.Stat. ch. 62, § 71 *et seq.* (Smith-Hurd 1981). Section 73 was the counterpart of § 12–803. Prior to October 1, 1977, § 73 provided in part that "[a]ll compensation above the exempt amount is subject to collection under a wage deduction order." That statutory language, which supports FMC's position, was deleted by the Illinois legislature with the passage of P.A. 80–724, § 1. Neither the former provision nor similar language has been inserted into the statute since that time. This strongly suggests that the legislature intends to allow a debtor to claim a wage exemption above the statutorily exempt amount of 85% of gross wages.

Section 12–1001 also was enacted about the same time as the new Illinois Code of Civil Procedure.[10] Previously, a debtor claimed exemptions under Ill.Ann.Stat. ch. 52, § 13 (Smith-Hurd 1981). Prior to January 1, 1970, § 13 provided in part that the debtor could claim a wild card exemption of up to $300 worth of property "[p]rovided, that such selection and exemption shall not be made by the debtor, or allowed to him or her from any other money, salary or wages due him or her from any person or persons or corporation whatever." That statutory language, which would support FMC's position, was deleted by the Illinois legislature. From January 1, 1970 to January 1, 1982, former § 13 provided that a debtor may

---

**10.** A new Illinois exemption law, with similar provisions to the current § 12–1001, was enacted effective January 1, 1982. *See* P.A. 82–685, § 2. However, a legislative gaffe reinstated the former exemption provisions when the new Illinois Code of Civil Procedure was adopted effec-

tive July 1, 1982. This error was corrected with the repeal of the former exemption law and replacement with the newer, more generous version of § 12–1001 effective July 13, 1982. *See* P.A. 82–280, § 12–1001; P.A. 82–783, Art. III, § 43.

exempt up to $300 worth of property, "including money, and salary or wages due him." *See* P.A. 76–1060, § 1; P.A. 81–241, § 1. That language was replaced by the enactment of a new Illinois exemption law, P.A. 82–685, § 2. Section 13(1)(b) of that law contained the same language as that in current § 12–1001(b), allowing a debtor to exempt up to $2,000 of an equity interest in "any other property." This Court believes that the history of § 12–1001 shows an affirmative legislative intent to allow a debtor to use the wild card provision to exempt wages. In 1970, the Illinois legislature repealed the language in § 13 prohibiting a wild card exemption in wages. Section 13 specifically permitted such an exemption for the next 12 years. While from 1982 on the wild card exemption statute has been silent regarding the availability of its use to exempt wages, it does allow a wild card exemption in "any other property" with no reinstatement of the prior prohibition on its use for wages. This Court must interpret the current statute's silence regarding wages in a manner consistent with *Smith* and *Barker*. Therefore, the conclusion is inevitable that rather than intending to return to pre-1970 exemption law with the 1982 omission, the legislature did not deem it necessary to continue the explicit authority allowing a debtor to use the wild card exemption for wages because the unlimited language "any other property" obviously included wages.[11]

## CONCLUSION

FMC asks this Court to read §§ 12–803 and 12–1001 in a restrictive fashion. The law is clear and to the contrary. Exemption laws are to be read broadly in favor of debtors and their families. If FMC does not like the result which flows from such a reading, this Court is not the proper forum to restrict a debtor's clear statutory exemption rights. Only the Illinois legislature can add language to those statutes to effect the result sought by FMC. This Court cannot ignore the statutes' language, rules of statutory construction, and the *Feilchenfeld*, *Smith*, and *Barker* directives. Therefore, the Court adheres to its ruling that the debtor may claim his garnished wages as exempt under § 12–1001(b) and denies FMC's motion for reconsideration.[12]

11. The Court is aware of the fact that § 12–803 and all of its predecessors provide that "[t]his provision (and no other) applies irrespective of the place where the compensation was earned or payable and the State where the employee resides." The phrase "and no other" does not prohibit a debtor's use of the wild card exemption in addition to § 12–803 to exempt wages. This is true for several reasons. First, as stated *supra*, Illinois law specifically allowed a debtor to use the wild card exemption for wages from 1970 to 1982. *See* former Ill.Ann.Stat. ch. 52, § 13 (Smith-Hurd 1981). Arguably, until October 1, 1977, this exemption could not be used to exempt garnished wages in excess of the statutory amount prescribed by former § 73 because that section provided that wages above the exempt amount were subject to wage deduction orders. Once that language was deleted, however, there was no impediment to a debtor using both §§ 13 and 73 to exempt wages. Thus, the legislature in continuing the use of the phrase "and no other" in § 12–803 and its predecessors could not have intended to preclude a debtor from claiming an exemption under the wild card provision. *Cf. Deschauer v. Hilt,* 105 Ill. App.3d 657, 660, 61 Ill.Dec. 399, 402, 434 N.E.2d 552, 555 (2d Dist.1982) ("[w]e find no suggestion in any other part of the exemption statutes, or in the garnishment statutes (Ill.Rev.Stat.1979, ch. 62, par. 33 *et seq.*) that the exemptions of section 13 should not apply in garnishment proceedings.") Second, it is much more logical to read the above-quoted sentence as a whole and interpret it to mean that the provisions of § 12–803 (and its predecessors), as opposed to similar laws of *other states,* apply to set maximum wage deductions even though the debtor earned or was paid the wages outside of Illinois or resides in another state. *See Taylor v. Taylor,* 44 Ill.2d 139, 141–42, 254 N.E.2d 445, 446 (1969).

12. As a necessary corollary, the Court adheres to its ruling that FMC failed to show that the debtor lacks a sufficient interest in the garnished wages to seek a turnover order pursuant to §§ 522(g) or (h). *See In re Johnson,* 53 B.R. at 925. FMC's motion for reconsideration in that regard also is denied.